# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### BIG STONE GAP  DIVISION

| | | |
|---|---|---|
| **KIMBERLY A. GEIGER,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:11CV00055 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | By:  James P. Jones |
| **COMMISSIONER OF** | ) | United States District Judge |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

*Pamela A. Counts, Lee & Phipps, PC, Wise, Virginia, for Plaintiff; Eric P. Kressman, Regional Chief Counsel, Region III, and Alexander L. Cristaudo, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the decision of the Commissioner.

## I

Kimberly A. Geiger filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying the plaintiff's claim for disability insurance benefits and supplemental security income benefits pursuant to Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C.A. §§ 401-434 (West 2011), 1381-1383f (West 2012).  Jurisdiction of this court exists pursuant to 42 U.S.C.A. §§ 405(g) and 1383(c)(3).

Geiger protectively applied for disability insurance benefits and supplemental security income on June 29, 2009.  She claimed disability since June 18, 2009, due to a cat bite that exacerbated her Reynaud's disease and caused severe and worsening nerve damage to her hand, and reflex sympathetic dystrophy ("RSD").  In addition, the plaintiff claimed she suffered from chronic back pain, depression and mood disorder.

The state agency initially denied the claim on October 29, 2009 and again on reconsideration on March 4, 2010.  A hearing was held before an administrative law judge ("ALJ") on June 17, 2011.  At the hearing, Geiger was represented by counsel and an independent vocational expert testified.  The ALJ denied her claim on June 29, 2011, and that decision became final when the Appeals Council denied her request for review.  Geiger then filed a complaint in this court, objecting to the Commissioner's final decision.

The parties have filed cross motions for summary judgment, which have been briefed.  The case is ripe for decision.


I


Geiger was 47 years old at the time of the ALJ's decision, a younger individual under the regulations.  *See* 20 C.F.R. § 404.1563(c) (2012).  Geiger has completed three years of college coursework and testified before the ALJ that she

will soon finish her bachelor's degree in political science.  (R. at 28.)  Geiger has operated a pet grooming business out of her home for more than fifteen years. (*Id.*) She testified that she continued to work after the date of the injury giving rise to her alleged disability, but that her condition had forced her to substantially reduce her hours each week.  (R. at 187.)  Geiger now receives assistance from a woman whom she employs as an apprentice in completing many of the physical tasks required in running her business.  (R. at 31.)  She testified that she receives about $500 per week from her work.  (R. at 29.)

Geiger reported a daily routine that consists of rising early, doing light work and caring for her ten-year-old daughter.  (R. at 200-01.)  She completes household chores such as cooking, laundry and washing dishes daily.  (R. at 202.)  She regularly attends church, drives a car and has no difficulties in managing her money.  (R. at 203-04.)  Geiger stated that her mother does her shopping because her Reynaud's disease makes her too sensitive to cold environments.  (R. at 203.) Geiger testified that this condition causes her "numb but extreme pain" and that she has episodes once or several times a day.  (R. at 36.)     She also reported that she suffers from anxiety that limits her ability to focus, complete tasks and follow directions.  (R. at 205-06.)

Prior to the alleged onset of Geiger's disability, medical records indicate that she sought treatment from her primary care physician, Michael Moore, M.D., for

conditions including anxiety, hypothyroidism and insomnia.  (R. at 267-69.)  From 2000 to 2005, Geiger was a patient at Arthritis Associates in Kingsport, Tennessee, where she was diagnosed with Reynaud's disease and hypothyroidism.  (R. at 285.)  Doctors there also noticed potential symptoms of depression and recommended treatment with prescription medications.  (R. at 294.)

The record reflects that Geiger sought treatment in the emergency room on June 22, 2009, after suffering a puncture wound as a result of a cat bite on her right wrist three days earlier.  (R. at 245.)  Geiger was prescribed medication and discharged from the hospital.  *Id.*  On June 29, 2009, Dr. Moore noted that Geiger's cat bite was "well healing."  (R. at 266.)

On July 8, 2009, however, Dr. Moore evaluated Geiger and noted that her Reynaud's disease in her right hand was "much worse" and that the hand was "dark" and "tender along [the] exterior tendon."  (R. at 265.)  Dr. Moore diagnosed Geiger with RSD.  (*Id.*)  On July 31, 2009, Dr. Moore ordered an X ray of Geiger's wrist, which exhibited "mild soft tissue swelling" but no fractures or other acute bony abnormalities and no periosteal reaction.  (R. at 276.)  Six days later, however, Dr. Moore observed that Geiger continued to suffer decreased sensation, increased sensitivity, weakness of grip and early muscle atrophy of her right hand and forearm.  Although he recommended that she take ibuprofen and do exercises to improve her range of motion, Dr. Moore believed that Geiger would lose "use of

[her] dominant hand" for more than one year, resulting in her becoming "totally disabled." (R. at 264.) Dr. Moore concluded that Geiger had become totally disabled on August 14, 2009. (R. at 263.) He opined that her RSD would prevent her from lifting or carrying any weight. (R. at 254.) He also stated that her condition would affect her ability to reach, handle, feel, push and pull with her right hand. (R. at 255.) Dr. Moore stated that cold temperatures and vibration would greatly increase her soreness and numbness, and that her condition would force her to miss more than two days of work per month. (R. at 256.)

On October 15, 2009, Dr. Moore noted that Geiger's Reynaud's disease was flaring up, making walking difficult. (R. at 261.) He also prescribed medication to manage her anxiety. (*Id.*) On December 3, 2009, Dr. Moore observed that she continued to suffer from anxiety, that her fingers were cold to the touch and that using her hand caused her pain. Dr. Moore stated that Geiger remained totally disabled. (R. at 259.) Dr. Moore's records from January 25, 2010, reaffirmed his conclusion that Geiger was totally and permanently disabled and observed that she suffered from chronic arm pain. (R. at 258.) Dr. Moore continued to observe symptoms of RSD, hypothyroidism, Reynaud's disease and anxiety with panic in his examinations of Geiger through 2010 and into 2011. (R. at 329-32.)

Subsequent to the cat bite, Geiger was evaluated by a number of mental health professionals. On October 15, 2009, Geiger was evaluated by D. Kaye

Weitzman, a licensed clinical social worker.  (R. at 278.)  Weitzman noted that

Geiger's appearance was casual and clean and that her orientation and thought

processes were intact.  She had no paranoia or delusions and her judgment and

insight were fair.  Weitzman observed that Geiger was depressed and reported

"horrible anxiety" about her marital status and the loss of her business.  Weitzman

recommended a course of individual counseling sessions for Geiger after assigning

her a GAF score of 40.[1]  *Id.*  In a subsequent appointment, Weitzman observed that

Geiger suffered from moderate depression, panic attacks and anxiety with mild

crying spells and irritability.  (R. at 279.)  Weitzman reported that Geiger remained

in school and was doing well except for some problems focusing, for which

Weitzman recommended medication to treat attention deficit disorder.  (*Id.*)

On February 12, 2010, Weitzman opined that Geiger suffered moderate

problems understanding, remembering and carrying out simple instructions, as well

as in making judgments on simple work-related decisions.  Weitzman further

stated that Geiger would have moderate to marked difficulties understanding and

remembering complex instructions, and marked difficulties carrying out complex

---

[1] A GAF score indicates an individual's overall level of functioning at the time of examination. It is made up of two components: symptom severity and social occupational functioning. A GAF score ranging from 61 to 70 indicates some mild symptoms or some difficulty in social, occupational, or school functioning; a GAF score ranging from 51 to 60 denotes functioning with moderate symptoms or moderate difficulty in social or occupational functioning; a GAF score ranging from 41 to 50 indicates functioning with serious symptoms or any serious impairment in social, occupational, or school functioning. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32-34 (4th ed. 2000).

instructions and making judgments on complex work-related decisions.  Weitzman stated that that Geiger's ability to interact appropriately with supervisors, co-workers and the public were not affected, but her mental impairments would still force her to miss two or more days of work per month.  (R. at 280-82.)

Geiger was also evaluated by Robert Spangler, Ed.D., a licensed psychologist, on May 21, 2011.  (R. at 333.)  Dr. Spangler noted her difficulties in using her right hand, as well as the fact that her fingers turned purple during the evaluation.  (*Id.*)  Dr. Spangler observed that she was socially confident but anxious, demonstrating erratic concentration.  He wrote, "Her anxiety level waxes and wanes depending on pain level but is coming under adequate control with medication."  (R. at 334.)  Dr. Spangler further noted, "She no longer attends counseling and feels that her primary care physician is giving her adequate treatment with [prescriptions]."  (*Id.*)  Dr. Spangler diagnosed Geiger with panic disorder and generalized anxiety disorder.  He determined that she had a GAF score of 55 to 60.  In evaluating her ability to do work-related activities, Dr. Spangler stated that she would have a good ability to follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors and function independently.  Her ability to deal with work stress and maintain concentration would be fair.  (R. at 338.)  Dr. Spangler concluded she would have poor or no ability to follow complex, detailed or even simple job instructions.  He

observed her ability to maintain her personal appearance, behave in an emotionally stable manner, relate predictably in social situations and demonstrate reliability would be fair.  (R. at 339.)  He concluded that her mental impairments would likely force her to miss about one day of work per month.

Geiger also sought treatment for chronic back pain, which Dr. Moore observed during his examination of Geiger on December 3, 2009.  An X ray of her back on May 13, 2010 revealed that Geiger suffered from degenerative disc disease and facet joint arthritis.  (R. at 322.)  Geiger testified before the ALJ that her back condition forces her to restrict the amount she works in her pet grooming business and that she cannot lift more than 15 pounds.  (R. at 32-33.)  Geiger testified, "I don't really have pain unless I'm doing real strenuous work you know.  I mean now standing for long periods of time does cause pain but most of the time if I'm not working . . . I don't have pain."  *Id.*

Based on the medical evidence in the record and the testimony presented at the hearing, the ALJ found that the plaintiff had the severe impairments of Reynaud's disease, RSD and degenerative joint disease.  (R. at 11-12.)  The ALJ found that these impairments did not meet the listing requirements.  (R. at 12.)  The ALJ found that the plaintiff has the residual functional capacity to perform a range of light and sedentary work, with certain restrictions.  (R. at 13.)  The vocational expert ("VE") testified that there existed a number of jobs in the

national economy that someone with Geiger's residual functional capacity could perform. (R. at 20-21.) Relying on his testimony, the ALJ concluded that Geiger was able to perform work that existed in significant numbers in the national economy and was therefore not disabled under the Act. (R. at 21.)

Geiger argues the ALJ erred in concluding that she did not suffer from severe mental impairments and in improperly determining her residual functional capacity. For the reasons below, I disagree.

### III

The plaintiff bears the burden of proving that she is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that her physical or mental impairment or impairments are of such severity that she is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A).

In assessing disability claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4)

could return to her past relevant work; and (5) if not, whether she could perform other work present in the national economy.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012).  If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases.  *Id.*; *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983).  The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy.  *Id.* at 869.

    In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through the application of the correct legal standard.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance."  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).  It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence.  *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976).  It is not the role of this court to substitute its judgment for that of the Commissioner.  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Geiger contends that the ALJ's decision is not supported by substantial evidence and is in violation of the applicable legal standards. She presents two arguments.

First, the plaintiff argues that the ALJ erred by failing to find that she suffered from severe mental impairments. (Pl.'s Br. 5.) I disagree. An impairment or combination of impairments is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities as defined by the regulations. 20 C.F.R. § 404.1521 (2012). Geiger was diagnosed with anxiety and a panic disorder by her treating physician, as well as a psychologist, Dr. Spangler. However, there are no medical records indicating emergency care or inpatient treatment for these impairments. While Dr. Spangler opined that Geiger had significant limitations in her mental ability to do work-related activities, specifically in making performance adjustments in a work environment, his check-the-box evaluation notes provided very little explanation for these findings. Moreover, Dr. Spangler observed no acute psychological symptoms and noted that Geiger demonstrated adequate social skills, concentration and intellect. Dr. Spangler further noted that Geiger's anxiety disorder was adequately controlled with medication.

Geiger also sought treatment with Ms. Weitzman, a licensed clinical social worker. Weitzman opined that Geiger exhibited anxiety and depression, but only

-11-

recommended a limited course of individual counseling sessions in which she would meet with Geiger once every two weeks.  Moreover, Geiger did not seek evaluation by Weitzman until after filing her claim in this matter, and terminated her formal treatment apparently after only one session.  Weitzman also noted no acute symptoms in her evaluation of Geiger, yet still opined that the plaintiff would suffer acute mental functional limitations.  Given the short duration of Weitzman's treatment of Geiger and the internal inconsistencies of Weitzman's conclusions, the ALJ appropriately accorded Weitzman's evaluation less weight.

Geiger's medical providers have described her as having an anxious, but appropriate affect and normal mental status.  (R. at 248, 278, 333.)  Geiger has not described any daily activities that were significantly limited by any psychiatric condition, other than some difficulties focusing in her college-level classes.  She testified to a relatively active lifestyle.  She attends church, does chores, manages her finances and studies.  She has also indicated that medication has been effective in assisting her to manage her symptoms.  Additionally, the state agency psychologist agreed that Geiger's mental disorders were not severe impairments.  The ALJ was required to consider the opinion of this "highly qualified" psychologist who is an "expert" in Social Security disability evaluations.  20 C.F.R. § 404.1527(f)(i) (2012).  Thus, I find that substantial evidence supports the ALJ's conclusion that Geiger's mental conditions were not severe.

Second, the plaintiff argues that the ALJ erred by improperly determining the plaintiff's residual functional capacity. (Pl.'s Br. 7.)   She contends that the ALJ improperly relied on the opinions of state agency physicians and failed to accord proper weight to the opinion of her treating physician as well as the reports of Gieger's in-person psychological evaluations.   Moreover, the plaintiff asserts that the ALJ failed to accord proper weight to these opinions in light of the requirement that he consider an individual's ability to do sustained work activities in an ordinary work setting on a "regular and continuing basis."   Social Security Ruling 96-8p, 61 Fed. Reg. 34474-01 (July 2, 1996).   A "regular and continuing basis" means eight hours per day for five days a week, or an equivalent schedule. *Id.*

In weighing medical opinions, the ALJ must consider factors such as the examining relationship, the treatment relationship, the supportability of the opinion, and the consistency of the opinion with the record.   20 C.F.R. § 404.1527(d) (2012).   Although treatment relationship is a significant factor, the ALJ is entitled to afford a treating source opinion "significantly less weight" where it is not supported by the record. *Craig*, 76 F.3d at 590.

In the present case, the ALJ considered the opinion of Dr. Moore, but gave little weight to his conclusions because Dr. Moore's medical assessment appears contrary to the weight of the additional evidence presented in the case.   It also

-13-

presents some internal inconsistencies.  Dr. Moore opined that Geiger would be "totally and permanently disabled" by the physical impairments to her wrist, yet he also concluded those impairments would not affect her ability to ambulate, stand or sit.  He also opined that the plaintiff would not be able to lift any weight, but the plaintiff testified she is capable of lifting fifteen pounds.  *Compare* 20 C.F.R. § 416.967(a) ("Sedentary work involves lifting no more than 10 pounds at a time . . . .").  Moreover, the plaintiff testified that she does not experience any pain unless she is doing "real strenuous" work.  Given these inconsistencies, as well as the weight of the additional evidence, the ALJ need not have accorded controlling weight to Dr. Moore's opinion as a treating physician.

The ALJ noted in his opinion that he assigned greater weight to the opinion evidence by the state agency physicians because it was generally consistent with the record and clinical findings.  The plaintiff objects to this approach because the state agency physicians did not have the benefit of reviewing the records of her examinations by Dr. Spangler and Ms. Weitzman, as well as the records of her subsequent evaluations by Dr. Moore.  As noted, the ALJ was within his discretion to accord these opinions less weight because of their lack of support in the record.  The simple fact that those opinions came later in time than the state agency opinions does not mean that they should be accorded greater weight.  As the Third Circuit has noted, "[B]ecause state agency review precedes ALJ review, there is

-14-

always some time lapse between the consultant's report and the ALJ hearing and decision.  The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it."  *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 360-61 (3d Cir. 2011).  In addition, the regulations provide that while the ALJ is not bound by any assessment made by state agency consultants, such consultants "are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation."  20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i).  Here, the ALJ appropriately found that the opinions expressed by Ms. Weitzman, Dr. Spangler and Dr. Moore could not have affected the opinions of the state agency examiners and properly relied upon those opinions for his decision.

## IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED:  January 27, 2013

/s/  James P. Jones
United States District Judge